**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:CV-08-701** |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **SCI-MUNCY, et al.,** | : | |
| Defendants | : | |

**MEMORANDUM**

Dawn Marie Ball filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983. Named as Defendants are the State Correctional Institution at Muncy ("SCI-Muncy"), where Ball is incarcerated, the SCI-Muncy Records Department and fifteen (15) SCI-Muncy officials and employees.[1] Also named as Defendants are the Northampton County Sheriffs and Judge Robert A. Freedberg, President Judge of the Northampton County Court of Common Pleas. Presently pending before the Court are motions to dismiss the complaint filed by Defendant Freedberg (Doc. No. 12) and the Commonwealth Defendants (Doc. No. 18). Also pending is Plaintiff's request for default with respect to the Commonwealth Defendants (Doc. No. 26), and Plaintiff's Motion for injunctive relief (Doc. No. 27).[2] For the reasons discussed below, Plaintiff's request for default will be denied. The motion to dismiss filed by Defendant Freedberg will be granted. The motion to dismiss filed by the Corrections Defendants will be granted in part and denied in part.

---

[1] These Defendants will be collectively referred to as the "Commonwealth Defendants."

[2] Plaintiff has failed to file a brief in support of her motion for injunctive relief. Accordingly, pursuant to M.D. Pa. L. R. 7.5, Plaintiff's motion will be deemed to be withdrawn.

**I.      BACKGROUND**[3]

Plaintiff alleges that on January 22, 2008, the Northampton County Sheriffs came to SCI-Muncy to take her to a hearing in the Northampton County Court of Common Pleas. She states that Defendant Gair came to her cell door around 2 p.m., and asked if she was "going." (Doc. No.1, Compl., at 1.) She asked him what he was talking about, and then immediately replied in the affirmative. She states that she jumped up and stripped out. Gair saw that Plaintiff's uniform was ripped so she took it from her to get a new one. Upon Gair's return she told Plaintiff to "forget it" and "shot the wicket." (Id., at 2.) When Plaintiff asked why she was not going, Defendant stated probably because Plaintiff "took too long." (Id.)

Plaintiff thereafter asked Defendant Wolford why the Sheriffs did not take her. Wolford replied that he did not know, but that the Sheriffs would return. A fellow inmate then informed Plaintiff that the Sheriffs were still at the prison. When Plaintiff looked out of her cell door through the pod window, she saw them and motioned for them to come over. Defendant George opened the pod door and Plaintiff states she yelled to the sheriffs. George thereafter closed the door, and the Sheriffs walked away. The same fellow inmate then informed Plaintiff that the Sheriffs left the prison.

Plaintiff asked Defendant Griner why the Sheriffs left. Around 5:30 the same afternoon, Griner informed Plaintiff that the Sheriffs had received a phone call and had to leave. Griner told Plaintiff this was all the information he had.

---

[3] The factual background information is drawn from Plaintiff's complaint. (Doc. No. 1.) The Court has read Plaintiff's complaint liberally, as she is proceeding pro se, and the court has drawn all reasonable inferences in the Plaintiff's favor, consistent with the standard governing the adjudication of a motion to dismiss.

Plaintiff made further inquiries about the incident to Defendant Baver, who told her it was "none of [her] business." (Doc. No. 1, Compl., at 2.) She also asked Defendant Eiswerth about the matter. Eiswerth informed her that when she asked the Sheriffs if they were here for Plaintiff, they said yes, but that they would return for her the following day in an older vehicle because they had heard Plaintiff urinated outside of her door. Eiswerth confirmed to the Sheriffs that this had occurred. Eiswerth later told Plaintiff that it was a staff member, and not the Sheriffs, who told her they would return for Plaintiff the following day. Based on the foregoing, Plaintiff claims that Eiswerth obstructed her efforts to go with the Sheriffs on January 22, 2008. When Plaintiff later asked Defendant Wolford if the sheriffs were coming back for her the next day, he stated that he did not know.

Plaintiff wrote to Defendants Torma, Shepler and Chamberlain about the matter, but they stated they did not know what happened. Plaintiff also spoke and wrote to Defendants Shaffer, Blessing and Pinard, who also informed her they did not know anything about the matter. When Plaintiff made a written inquiry to the SCI-Muncy Records Department, Defendant Skiro wrote back stating she knew nothing. Defendant Bitler responded to Plaintiff by stating she had not been cleared to go and giving Plaintiff other excuses. According to Plaintiff, Defendant Nichols also gave excuses when asked about the incident.

Plaintiff states she further wrote to the "county court clerk twice, the judge once, [her] lawyer twice and the sheriffs' office twice" sometime at the end of February, when she was allowed a pen. (Id., at 3.) Plaintiff never received a response until March 17, 2008, when her attorney informed her that the appeal was heard without her on January 25, 2008, and was dismissed. Counsel informed Plaintiff that the Sheriffs testified under oath that Plaintiff refused

to go with them and that she ". . . screamed protests and threatened the well being of the Sheriffs and ripped [her] uniform." (Id., at 3.) Plaintiff claims that this never happened, and that she was all prepared to go with the Sheriffs that day.

Finally, Plaintiff contends that in the letter her attorney wrote her on January 28, 2008, which she never received until March 17, 2008, he asked her to contact him if she wanted to appeal the decision regarding the denial of her appeal. According to Plaintiff, she was not allowed pens or envelopes until the end of February, and the appeal had to be in by February 25, 2008. She claims she did not know this because she never received the letter advising her of this deadline. Plaintiff then references another civil action she filed with this Court, Ball v. SCI-Muncy, et al., No. 1:08-cv-0391, she states she filed to pursue the mail interference claims. In the instant action, Plaintiff seeks monetary damages for the violation of her rights under the First Amendment when Defendants obstructed her access to the courts.

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. In reviewing a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)(quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002). Although the court is generally limited in its review to the face of the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1997); see also In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the plaintiff has an obligation to allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted). Furthermore, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, Id. at 1960. When evaluating a motion to dismiss, a court need not "credit a complaint's 'bald assertions' or 'legal conclusions.'" Evancho v. Fisher, 423 F.3d 347, 354-55 (3d Cir. 2005). Finally, when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," Twombly, 127 S. Ct. at 1960, the complaint should be dismissed.

## III. DISCUSSION

### A. Request for Default against Corrections Defendants

On October 6, 2008, Plaintiff filed a document entitled "Request for Default Judgment on Defendants." (Doc. No. 26.) In this filing, Plaintiff contends that the seventeen (17) Corrections Defendants are in default because they failed to timely respond to the complaint. Specifically, she argues that Defendants did not respond to the complaint ". . . until way over 20 days." (Id.)

In reviewing the record, it is clear that an entry of default is not warranted for the following reasons. An order directing service of the complaint on Defendants was issued on April 17, 2008. (Doc. No. 7.) The Request for Waivers was sent on May 5, 2008. Waivers of Service of the Summons was executed on June 5, 2008, on behalf of the Corrections Defendants

and filed with the Court on June 18, 2008. (Doc. No. 14.) Pursuant to Federal Rule of Civil Procedure 4(d)(3), Defendants had sixty (60) days from the date the request for waiver was sent, or July 5, 2008. Because July 5, 2008, was a Saturday, Defendants' motion to dismiss filed on July 7, 2008, was a timely response to the complaint.[4]

### B. Motion to Dismiss by Defendant Freedberg

In reviewing the complaint, the only allegation that appears to be set forth against Defendant Freedberg is Plaintiff's claim that she wrote to the "judge" once at the end of February, and never got a response. (Doc. No. 1, Compl., at 3.) In construing the complaint in the most liberal sense, the only other possible claims against Freedberg would be with regard to decisions he made during the court proceeding that took place before him on January 25, 2008.

The doctrine of judicial immunity bars civil suits for monetary damages against judicial officers who are acting in their judicial capacity, i.e., whose challenged actions are taken in the course of their judicial activities and whose actions are not lacking in jurisdiction. See Mireles v. Waco, 502 U.S. 9, 11-12 (1991)(per curiam). Moreover, the doctrine of judicial immunity renders a judge not only immune from damages but also immune from suit. Id. at 11. Further, it has been held that even allegations of procedural irregularities, failures to comply with the law or acting in bad faith are not sufficient to pierce judicial immunity. Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000).

---

[4] The Court notes that in reviewing the docket, it appears that Defendant Northampton County Sheriffs returned a waiver of service on May 19, 2008, but have not yet filed a response to the complaint. (Doc. No. 11.) Plaintiff's Request for Default was filed only with regard to the Corrections Defendants and the issue of their alleged filing of an untimely response to the complaint. Accordingly, Plaintiff will be directed to show cause within ten (10) days why Defendant Northampton County Sheriffs should not be dismissed on the basis of failure to prosecute.

The alleged improper actions taken by Defendant Freedberg were all taken by him during the judicial proceedings or associated therewith. These actions were all clearly taken in his judicial capacity.

To the extent Plaintiff complains that Freedberg failed to respond to a letter Plaintiff wrote him several weeks following the judicial proceeding alleging improper conduct by the other Defendants, Plaintiff also fails to state a claim. To state a claim under § 1983, Plaintiff must allege that Defendant Freedberg was personally involved in the alleged wrongful actions either by actual conduct, or knowledge of and acquiescence in the wrongful actions. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Plaintiff fails to allege any personal involvement on the part of Freedberg, and being alerted to the alleged improper conduct of the other Defendants well after the fact does not establish personal involvement on his part. Plaintiff's attempts to bolster her claims by adding new facts and allegations in her opposition brief does not defeat the motion to dismiss. According, Defendant Freedberg's motion to dismiss the claims set forth against him in the complaint will be granted.

### C. Motion to Dismiss by Corrections Defendants

A motion to dismiss has also been filed on behalf of all seventeen (17) SCI-Muncy Defendants. Defendants first seek dismissal of all claims alleged against SCI-Muncy and the SCI-Muncy Records Department as barred by the Eleventh Amendment. "A plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." Chittister v. Dep't of Community & Economic Dev., 226 F.3d 223, 226 (3d Cir. 2000). Section 1983 does not abrogate Eleventh

Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345 (1979). This immunity extends to all departments or agencies "having no existence apart from the state." Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981), citing Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280 (1977). Pennsylvania does not waive its sovereign immunity for claims based on the denial of civil rights. Additionally, a prison or correctional facility is not a "person" within the meaning of § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Phippen v. Nish, 223 Fed. Appx. 191, 192 (3d Cir. 2007).

Defendants further contend that all claims for damages against each of the individual defendants in their official capacity are also barred by the Eleventh Amendment. The Eleventh Amendment prohibits a lawsuit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury. Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). Accordingly, the Plaintiff's claims for damages against Defendants in their official capacities will be dismissed.

Finally, Defendants contend that the claims must be dismissed against them because Plaintiff has failed to plead personal involvement. In order to state a § 1983 claim, a plaintiff must establish that each and every defendant was personally involved in depriving him of his rights. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). There is no liability for a supervising defendant based on the theory of respondeat superior. Rode, 845 F.2d at 1207. Thus, individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Personal involvement may be shown by either allegations of personal direction of or actual knowledge and acquiescence in the deprivation. Id. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the

plaintiff of his rights is insufficient to establish personal involvement. <u>Rode</u>, 845 F.2d at 1208. With this standard in mind, the Court will evaluate Defendants' motion to dismiss the claims on the basis of lack of personal involvement.

Defendants Chamberlain, Torma, Shepler, Shaffer, Blessing, Pinard, Skiro, Bitler and Nichols seek their dismissal with regard to the denial of access to the courts claim. They argue that Plaintiff only alleges that: (1) Defendants failed to respond to an inquiry regarding why the Sheriffs did not take her on the date in question or (2) she spoke and wrote to these Defendants following the incident seeking information and Defendants replied by stating they knew nothing about the matter. Clearly, dismissal of the claims against these Defendants is warranted as Plaintiff does not allege any personal involvement on their part in the failure of the Sheriffs to take her to court on January 22, 2008.

Dismissal of the same claims is also proper with regard to Defendants Gair, Wolford, George, Griner and Baver who are not alleged to have participated in or had any actual knowledge of the alleged obstruction of Plaintiff's access to the courts. Rather, Plaintiff merely contends that when asked why the Sheriffs did not take her, these Defendants made guesses as to why the Sheriffs left, and when they would return. The complaint simply contains no allegations which even suggest said Defendants had any personal involvement or contemporaneous, personal knowledge of the alleged harm and acquiesced in it.

The Court, however, will deny Defendants' motion to dismiss with regard to Defendant Eiswerth. Without passing judgment as to the ultimate success of this claim, the Court finds that Plaintiff has alleged allegations sufficient to survive a motion to dismiss.

Defendants also seek dismissal of Plaintiff's general mail interference allegations set

forth at the end of her complaint. She states that the prison lost nineteen (19) days of her mail, and claims she still has not received it. According to Plaintiff, included in the lost mail was a letter advising her that any appeal with regard to Defendant Freedberg's decision would be due by February 25, 2008. Even accepting Plaintiff's allegations as true, she fails to allege that any of the named Defendants had any personal involvement in the loss of her mail.[5]

An appropriate order denying Plaintiff's request for default (Doc. No. 26), granting Defendant Freedberg's motion to dismiss (Doc. No. 12) and granting in part and denying in part the motion to dismiss filed by the Corrections Defendants (Doc. No. 18) follows.

---

[5] Further, in reading the complaint, it appears that Plaintiff may already be pursuing this claim in a separate action when she states ". . . the appeal would have to be in by 2-25-08, but I also never got that letter saying that which brings me to the case #1:CV-08-391 when they lost 19 days of my mail . . . ." (Doc. No. 1 at 3.) As such, it seems that Plaintiff has raised this claim in a separate action.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:CV-08-701** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **SCI-MUNCY, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, this 29th day of January, 2009, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiff's Motion for Injunctive Relief (Doc. No. 27) is **deemed withdrawn** for failure to file a supporting brief. See M.D. Pa. L. R. 7.5

2. Plaintiff's Request for Default (Doc. No. 26) is **denied**.

3. The Motion to Dismiss filed by Defendant Freedberg (Doc. No. 12) is **granted.** All claims set forth in the complaint against said Defendant are dismissed in their entirety.

4. The Motion to Dismiss filed by the Corrections Defendants (Doc. No. 18) is **granted in part and denied in part.** The motion is **granted** to the extent that all claims set forth against Defendants SCI-Muncy, SCI-Muncy Records Department, Chamberlain, Torma, Shepler, Shaffer, Blessing, Pinard, Skiro, Bitler, Nichols, Gair, Wolford, George, Griner and Baver are dismissed. The motion is **denied** with respect to the access to the courts claim set forth against Defendant Eiswerth in her individual capacity.

5. Within twenty (20) days from the date of this Order, Defendant Eiswerth shall file an answer to the complaint.

6. Within ten (10) days from the date of this Order, Plaintiff shall show cause why Defendant Northampton County Sheriffs should not be dismissed from this action on the basis of failure to prosecute.

                                          S/ Yvette Kane
                                          YVETTE KANE, Chief Judge
                                          Middle District of Pennsylvania